```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MATT E. GENTRY,

                        Plaintiff,           12-CV-1040(MAT)

        v.                                   **DECISION
                                             and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                        Defendant.
_____
```

## INTRODUCTION

Matt E. Gentry ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##10, 12.

## BACKGROUND

On December 18, 2008, Plaintiff filed an application for DIB alleging disability beginning October 13, 2008, due to herniated nucleus pulposus of the spine with neural impingement, radiculopathy, and radiculitis. T. 95, 105. His application was

---

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

initially denied, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). T. 9.

Plaintiff appeared with counsel before ALJ William M. Weir in Buffalo, New York on October 6, 2010. T. 25-51. Following the hearing, the ALJ found: (1) Plaintiff did not engage in substantial gainful activity since October 13, 2008; (2) he had the severe impairments of lumbar disc herniation and radiculitis; (3) his impairments did not meet or equal the Listings set forth at 20 C.F.R. 404, Subpart P, Appx. 1, and that he retained the residual functional capacity to perform the full range of light work; (4) Plaintiff could not perform his past relevant work; and (5) there was other work that existed in significant numbers in the national economy that Plaintiff could perform. Applying Medical-Vocational Rules 202.21 and 202.14, the ALJ concluded that Plaintiff was not disabled under the Act. Id.

An unfavorable decision was issued on October 21, 2010. T. 13-24. The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 5, 2012. T. 1-5. This action followed. Dkt.#1.

Plaintiff now moves for judgment on the pleadings arguing that the ALJ's decision was flawed because: (1) Plaintiff's spinal impairments met or medically equaled Listing 1.04A; (2) the RFC finding was based upon factual and legal error; and (3) Social

Security Ruling ("SSR") 96-7p was not followed in the credibility evaluation. Pl. Mem. (Dkt. #11) 17-24.

The Commissioner has filed a cross-motion asserting that substantial evidence supports the ALJ's decision that Plaintiff was not disabled during the period at issue. Comm'r Mem. (Dkt.#12-1).

## DISCUSSION

### I. General Legal Principles

#### A. Scope of Review

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

#### B. Standard for Disability Claims

In order to receive disability benefits, a claimant must become disabled while he still meets the insured status requirements of the Act and the regulations promulgated by the Social Security Administration. Arone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has established a five-step sequential evaluation for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520. The Commissioner must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and meets the duration requirement such that the claimant is per se disabled;[2] (4) whether the claimant has the residual functional capacity ("RFC") to perform his past work; and (5) whether the claimant has the RFC to do any other work, in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

## II. Medical Evidence

Approximately one year after Plaintiff suffered a work injury while pushing heavy equipment, he underwent a magnetic resonance imaging ("MRI") of the lumbar spine on December 5, 2008, which revealed degenerative disc disease at T11-12 and L3-4 through L5-S1

---

[2] If the claimant's impairment "meets or equals" one of the listed impairments, she is per se disabled irrespective of her "age, education, and work experience," and the sequential evaluation stops. 20 C.F.R. § 404.1520(d).

4

and left foraminal disc herniations and L3-4 and L4-5 with right paracentral broad-based disc protrusion at L5-S1. T. 176-77.

Plaintiff saw Dr. Cameron B. Huckell, a spine specialist, on January 12, 2009. T. 192-97. He reported radiating pain in his left lower back that ranged from 5 to 7/1 and burning sensation in the left anterior thigh. T. 193. Plaintiff had been continuously working until his position was terminated in October, 2008. T. 195.

Upon examination, Plaintiff had normal gait, paravertebral muscle rigidity, reduced lumbar range of motion by 10-20 degrees, full strength in the extremities, positive straight leg raise, normal deep tendon reflexes, and intact sensation. T. 194. Dr. Huckell noted that the MRI from the previous month showed left-sided foraminal disc herniation at L3-L4, mild disc bulge at L4-L5 with a small left-sided disc herniation, and a right-sided central disc herniation at L5-S1. Id. Additionally, an x-ray of the lumbar spine taken that day showed narrowed disc spacing at L5-S1, satisfactory bone quality, and no evidence of spondylolysis or spondylolisthesis. Id. Diagnoses were herniated disc of the lumbar spine without myelopathy, lumbar radiculitis, and lumbar degenerative disc disease. T. 195. Dr. Huckell recommended lumbar epidural injections and requested authorization from Plaintiff's Workers' Compensation carrier. Id.

On March 10, 2009, a Functional Capacity Evaluation was conducted by Mary Orrange, an occupational therapist. T. 188-91.

5

Plaintiff's physical examination showed limited range of motion forward trunk flexion to 50 degrees. T. 188. He reported his pain ranged from 3 to 7/10, and did not demonstrate physical signs that pain was present during testing. T. 188-89. Ms. Orrange concluded that Plaintiff was able to perform light to medium physical demand level work, with a mild limitation in postural activities such as rotation in standing and standing bent forward; mild limitation in kneeling; and below average right grip strength. T. 188-89.

Plaintiff returned to Dr. Huckell on March 13, 2009, complaining of ongoing back pain. T. 178-81. He reported that the pain was located on the left side of the low back and radiated to his thigh, and that he had numbness, spasms, and burning in the left anterior thigh. T. 178. His physical examination was unchanged from his previous visit, including reduced range of motion in the lumbar spine and positive straight leg raising test. T. 179-80. Diagnoses were herniated disc without myelopathy, degenerative disc disease-lumbar, and radiculitis-lumbar. T. 180. Spinal decompression was discussed and continued conservative treatment was recommended by the doctor. Id. Dr. Huckell opined that Plaintiff had the work restrictions of frequently lifting or carrying up to 25 pounds, occasional lifting of up to 50 pounds, and no prolonged standing, walking, bending, reaching, or sitting. Id.

6

On May 5, 2009, Plaintiff underwent a consultative examination by Cyndria Bender, M.D. T. 210-13. Plaintiff appeared uncomfortable during the examination but was in no acute distress. Plaintiff had marked stiffness in the upper body, a wide stance, an 80% squat, and exhibited difficulty in rising from the chair. T. 211. He had a decreased motion in the lumbar spine, positive straight leg raising on the left, positive point pain, and decreased strength in the right lower proximally and left lower distally. T. 212. Dr. Bender opined that Plaintiff had moderate limitations with heavy lifting, carrying heavy objects, pushing or pulling heavy objects; and mild limitations with standing and sitting for prolonged periods of time secondary to low back pain. T. 213.

A few weeks later, Plaintiff returned for a spinal evaluation with Dr. Huckell with reports of ongoing, increased lower back pain that he rated 7/10 with anterior thigh numbness and parasthesis from prolonged standing. T. 258-61. On examination, Plaintiff walked with abnormal gait partially flexed at the waist and exhibited paravertebral muscle rigidity, limited lumbar range of motion, and positive straight leg raising. T. 259-60. An x-ray showed disc space height narrowed at L5-S1, with no evidence of spondylolysis, spondylolisthesis, or segmental instability. T. 260. Dr. Huckell restated the same limitations as before regarding Plaintiff's ability to perform light-to-medium duty work with restrictions. Id.

Plaintiff received regular chiropractic care from Ronald Reeb, D.C., beginning in August, 2008. T. 227-39, 262-63. On May 28, 2009, he presented with complaints of low back pain with radiating pain to his left leg and numbness in the left thigh. T. 232. Plaintiff reported that Lidocaine patches decreased his pain to a 3/10 from 5/10 for 8 to 10 hours, chiropractic treatment provided some relief for 1-2 days, and he took 3 Lortab tablets daily. Id. Examination showed chronic spasm/hypertonicity at the thoracic and lumbar paraspinals from T5 to L5 with associated trigger points, active lumbar range of motion decreased with pain, tenderness over L1 to L5, and positive straight leg raising. T. 233. Dr. Reeb noted that the Workers' Compensation insurance carrier denied requests for authorization of spinal decompression, and opined that without the procedure, Plaintiff's prognosis was poor. T. 234.

Another lumbar spine MRI dated June 1, 2009 showed small to moderate right paracentral L5-S1 disc herniation, with mild bilateral foraminal stenosis, small left posterolateral-to-far-lateral L4-5 disc herniation, slightly encroaching on the exiting left L4 nerve root, and moderate L3-4 direct foraminal disc herniation, with the disc extruding superiorly within the disc space and markedly impinging on the existing L3 nerve root. T. 255-56. Dr. Huckell stated that Plaintiff's lumbar disc pathology remained essentially unchanged, he was under a mild to moderate

disability as a result of his work-related accident, and was still limited to light-to-medium duty work. T. 256.

Plaintiff returned to Dr. Huckell on September 18, 2009. T. 248-52. Examination results were unchanged, including abnormal gait, muscle rigidity, and decreased range of motion. After the evaluation and reviewing the June, 2009 MRI study, Dr. Huckell noted that Plaintiff had a functional tolerance of ongoing pain and surgery was an option of "last resort if the pain becomes intolerable and intractable on a daily basis or if conservative treatments fail." Epidural injections were discussed if Plaintiff's pain worsened. T. 250.

In January, 2010, Plaintiff saw Dr. Huckell complaining of increased low back pain that radiated to the lower extremities, anterior thigh numbness, and paresthesias with prolonged standing. He rated his pain level at 7 to 9/10. T. 240-41. Dr. Huckell's examination and assessment remained essentially unchanged. T. 241-43.

On April 19, 2010, Plaintiff saw Dr. Shenoy, who continued Plaintiff's prescription for Lortab for back pain. T. 245.

### III. **Non-medical Evidence**

Plaintiff was 49 years-old on the date of his alleged disability onset and had a high-school education. T. 29, 145. He had previously worked as a newspaper deliverer, carpet installer, and material handler. T. 30-31.

On October 13, 2008, Plaintiff suffered injuries in a work accident involving a 55-gallon drum. T. 33. He returned to work shortly thereafter, but lost the job in October of 2008 for other reasons. T. 33. He did not seek other employment due to his injuries. Id.

Plaintiff told the ALJ that he was restricted to lifting no more than 20 pounds with no squatting or kneeling due to herniated discs and a pinched nerve. T. 33-34. He saw a chiropractor twice per week and Dr. Huckell, a spine surgeon, for his lower back. Plaintiff took 4 tablets for Lortab daily and described lower extremity numbness, which occurred after standing for periods of 35-40 minutes. T. 34-36. He stated that he re-injured himself kneeling and twisting while helping his friend with a project. T. 36-38. Plaintiff reported that he could walk for 15 minutes, sit in a chair for 30 minutes, and lift 5-10 pounds before experiencing pain symptoms. T. 40-41. He had to lie down to relieve pain for 4 hours during the day, and his pain interrupted his sleep. T. 41-42.

In an April 21, 2009 Function Report, Plaintiff stated that he lived with his elderly father, slept 4-5 hours per night, and had problems putting on his shoes and socks and reaching his lower legs and feet while bathing. T. 132-33. He could perform all other self care, prepared simple meals daily, and did limited chores as needed with frequent breaks. T. 133-34. Plaintiff went outside daily,

could drive and ride in a car, went out alone, shopped in stores, watched television, went fishing and camping, and socialized semi-regularly. T. 135-36. He could not lift, squat, stand, reach, walk, sit, climb stairs, or kneel for prolonged periods of time without an increase of pain and discomfort. T. 136, 140.

### IV. The decision of the Commissioner was not supported by substantial evidence.

#### A.   Erroneous Step Three Analysis

Plaintiff argues that his spinal impairments met or medically equaled the criteria for Listing 1.04A, and therefore a finding of disabled was appropriate at step three of the sequential evaluation. Pl. Mem. 17-18.

To be considered disabled under Listing 1.04A, a plaintiff must demonstrate evidence of a disorder of the spine that results in the compromise of a nerve root or the spinal cord with evidence of nerve root compression. See 20 C.F.R. Part 404, Subpart P, Appx. 1, §§ 1.04, 1.04A. The nerve root compression must be "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Id., § 1.04A.

It is the plaintiff's burden to "demonstrate that [his] disability [meets] 'all of the specified medical criteria' of a spinal disorder." Otts v. Comm'r, 249 Fed.Appx. 887, 888 (2d Cir.

11

2007) (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530 (citation omitted).

In his step three finding, ALJ failed to state with adequate specificity why Plaintiff's impairments did not meet the criteria of the Listings. Rather, he concluded without elaboration that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . . The undersigned specifically considered listing 1.04 and finds the criteria are not met." T. 18. Mere assertions that a claimant's impairments do not meet the severity of specific listings, without more, do not constitute the "specific factual findings" necessary for denying a disability claim. Wood v. Colvin, 987 F.Supp.2d 180, 192-93 (N.D.N.Y. 2013) (quoting McCallum v. Comm'r, 104 F.3d 353, *1 (2d Cir. 1996) (table)).

Moreover, evidence of nerve root compression was present in two MRI studies dated December 2, 2008 and June 1, 2009. T. 176, 255-56. Plaintiff exhibited decreased range of motion of the lumbar spine in nearly every examination. T. 180, 184, 212, 233, 242, 250, 255, 260. Radicular pain, radiculitis, or radiculopathy to the lower extremities were noted repeatedly. T. 180, 185, 187, 195, 232. Sensory disturbance was noted in the form of lower extremity numbness, which Dr. Huckell opined was consistent with the

12

pathology revealed by the MRI studies. T. 240-42, 248-50. Dr. Reeb documented right thigh numbness in his examinations. T. 246-47, 262-63. Also uniform in the record is evidence of Plaintiff's positive straight leg raise tests. T. 179-80, 194. The Functional Capacity Evaluation noted, among other things, decreased grip, and the consultative examiner documented decreased muscle strength in the lower extremities, as well as positive straight leg raising from the sitting and supine positions. T. 188, 212. Even construing the evidence conservatively, Plaintiff has made an adequate showing to meet the requirements of Listing 1.04A. The ALJ's decision, in contrast, did not cite evidence from the medical record to support his determination that Plaintiff's impairments did not qualify under Listing 1.04A and therefore was not supported by substantial evidence.

### B. Remedy

The record contains substantial evidence to support a finding that Plaintiff's impairments were severe enough to meet the impairments described in Listing 1.04A.

Remand solely for the calculation of benefits is proper where further evidentiary proceedings would serve no purpose in light of persuasive proof of the plaintiff's disability. See, e.g., Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004) ("'[W]here this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to

remand for a calculation of benefits.'"); see also Cherico v. Colvin, No. 12 Civ. 5734, 2014 WL 3939036 at *31 (S.D.N.Y. Aug. 7, 2014) ("If, however, the record provides 'persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose,' the court may reverse and remand solely for the calculation and payment of benefits.") (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)); Sanchez v. Astrue, 07 Civ. 9318, 2010 WL 101501 at *11 (S.D.N.Y. Jan. 12, 2010) ("[A] court can also reverse and remand solely for the calculation of benefits when 'substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits.'" (quoting Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996)).

The record here is complete, and the ALJ noted no inconsistencies among the objective imaging tests, treatment notes, and consultative examinations. T. 19-20. The Commissioner acknowledges that there were no significant gaps in the record. Comm'r Reply Mem. 3-4. Because the Court has already determined that Plaintiff has satisfied the criteria of a listed impairment and disability per se has been established by substantial evidence of the record, Plaintiff is entitled to benefits without further analysis. Accordingly, the sole remaining task for the ALJ on remand is to calculate benefits. See Kelly v. Astrue, No. 12-CV-6477, 2014 WL 3563391 (W.D.N.Y. July 18, 2014) (plaintiff's impairments satisfied requirements of the Listings; further

administrative proceedings were not warranted because there were no inconsistencies or gaps in the record). Having concluded that a remand for calculation of benefits is warranted, the Court need not reach Plaintiff's remaining contentions that the ALJ erred in determining his RFC and in assessing his credibility.

## CONCLUSION

For the reasons discussed above, the Commissioner's determination that Plaintiff was not disabled within the meaning of the Act was not supported by substantial evidence in the record. Plaintiff's motion for judgment on the pleadings (Dkt.#10) is granted and the case is remanded for the calculation of benefits. The Commissioner's motion for judgment on the pleadings (Dkt.#12) is denied. The Clerk of Court shall close the case.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          June 19, 2015